Let's move on, Ms. Portuguese. Good morning, Emily Portuguese for the appellant Albert Korb. I would like to reserve three minutes for rebuttal, please. Very well. Go ahead, please. The court below wrongly dismissed Mr. Korb's complaint based on failure to exhaust, even though he attempted to show the court that he exhausted on multiple occasions. As such, this court should remand to allow Mr. Korb to supplement his complaint for three reasons. First, the plain text and normal operation of Rule 15d allow plaintiffs to use supplemental complaints to cure initial exhaustion defects. Second, this court's decision in Garrett v. Wexford Health and the Supreme Court's decision in Jones v. Bach make clear that the PLRA does not override the normal procedure of Rule 15d. Wouldn't the normal procedure be to dismiss without prejudice and allow him to file an amended complaint? Your Honor, the normal procedure here would be to allow Mr. Korb to use Rule 15d to supplement his complaint because he had properly and fully exhausted. However, if there were a plaintiff who unlike Mr. Korb had not yet completed the prison grievance system, then the proper procedure there would be to dismiss the complaint without prejudice. And how do you draw that line? What brings you to that conclusion that the proper procedure, if there has been full exhaustion, is supplementation and if there has been partial or no exhaustion, an amended complaint? Your Honor, this is following the normal operation of Rule 15d, both outside of the PLRA context and in the PLRA context. So first, the Supreme Court in Matthews v. Diaz allowed a supplemental complaint post-filing for exhaustion post-filing and allowed it even when the text of the statutory precondition precluded exhaustion post-filing. And this Court follows the same normal practice in this Court's decision in T-Mobile v. City of Wilmington. I'm very familiar with that case. Yes, Your Honor, I know you were the district judge on that case. So you're aware that this Court allowed the plaintiff to file a supplemental complaint almost a year into that litigation to show that he had complied with the pre-filing statutory requirement, even though T-Mobile did that after filing. But isn't, I think what Judge Rebrano might be asking is, isn't another reasonable approach is a dismissal without prejudice, which in fact the Garrick Court observed in a footnote could have happened? Your Honor, these are the two different and alternative forms of relief that Mr. Corb is asking for. The second would be to dismiss without prejudice to allow refiling, provided that the Court told the statute of limitations to allow him to timely refile. However, respectfully, Your Honor, these two remedies are not equivalent for a couple reasons. First, Rule 15d allows plaintiffs to supplement their complaint to show that they exhausted Mr. Corb properly and fully exhausted and should be allowed to use Rule 15d to show that. If the Court does not allow him to do so, he is not getting the relief that he is entitled to as a matter of law. But beyond that, practically dismissal without prejudice to refiling would be difficult. Mr. Corb is a 77-year-old special needs inmate who would face numerous barriers to refiling. What barriers would he face? If he wants this case to continue, he's going to have to then participate in the litigation. So what barrier would he face by having to file a new complaint? Put aside the moment the statute of limitations matter you've just raised. Yes, Your Honor. Well, he is someone who is a 77-year-old inmate who has special needs and mental health issues, and it would be difficult for him to refile, to navigate the judicial screening process a second time, to pay the filing fee a second time, to have to handle all of those barriers. He didn't pay the filing fee. He was granted informal purpose. Your Honor, he still did pay the filing fee. Just his IFP allowed him to pay it in installments over the course of the case instead of paying it in full at the time of filing. I think you're pointing out to kind of idiosyncratic problems with this particular case, and maybe this is just an equitable result, but what is the rule that emerges here? In other words, a district court or a litigant, when would they know they can supplement and when do they know they have to file an amended complaint? Your Honor, the difference is whether at the time of dismissal, either sua sponte during the screening process or upon motion by the defendants, or at the time of a motion for leave to supplement, whether the plaintiff has fully and properly exhausted, like Mr. Korb did here, or whether they are not completely done with the prison grievance process or choose not to participate in the grievance process. Does it require that the petitioner have begun the exhaustion process if you file a complaint and you haven't begun the exhausting process and there's a motion to dismiss, do you then supplement, ask for a stay? In other words, how is practically this going to be sorted out? Your Honor, in the hypothetical you just posed, because the plaintiff had not fully and properly exhausted, had not met the PLRA exhaustion requirement, that motion to dismiss should be granted without prejudice to refiling should that plaintiff be able to fully exhaust. But that is not what happened here. Mr. Korb filed his initial grievance form just days after initiating the lawsuit and fully and properly exhausted the prison grievance policy before the defendants in this case were ever even served. He was diligent at every step of the way, and after he completed the prison grievance system, he made it his every effort to alert the court that he had completely exhausted. So let's just see if we can distill a rule then. You're saying that if you have a plaintiff who didn't start the process, dismissed without prejudice. If you have a plaintiff who started the process and completed it before a motion to dismiss is filed, that should go forward as long as there's something before the judge that says it's been exhausted. Your Honor, that is correct. Our rule would allow plaintiffs to use a supplemental complaint to update to show the fact that they exhausted only if they fully and properly complied with the prison grievance policy. So anyone who either has not started to grieve, did not appeal, improperly filled out the forms, or made some error in another way would not be able to take advantage of a supplemental complaint. All right, let me ask you this. Most of the – strike that. PLRA exhaustion is not a pleading requirement. So if the complaint made no reference to exhaustion and the first time failure to exhaust is raised by the defendants on a motion to dismiss, are we in supplemental pleading land or are we in a presentation of new evidence that converts it to Rule 56 and we're in summary judgment land? Are you following my procedure? Yes, Your Honor. If the first time that it was ever raised was on a motion to dismiss, I believe that the district court could treat it the same way as they treat a motion for leave to amend following a motion to dismiss. So if there was some failure to state a claim, the plaintiff could be given 30 days to amend that complaint under shame devolver in this court's decision, and the same could be true for a supplemental complaint. It would not require any extra work on the district court's part simply to allow 30 days to supplement the complaint as they would normally allow 30 days to amend the complaint. But that's not what occurred here. Mr. Korb did not wait until the defendants brought up the exhaustion issue. He actually sent a letter to the court immediately upon completing the prison grievance policy, and in that letter at J46, he told the court that he exhausted, attached evidence of his exhaustion, and asked the court to please consider the evidence to proceed with his case. This letter should have been- Let me ask you this question along these lines, because like Judge Schwartz and Judge Rebrano, I'm trying to think about what rule should arise from our discussion. So thus far, no other circuit has gone as far as to allow a plaintiff to supplement a complaint after exhausting administrative remedies without having exhausted at least one claim in the original complaint. So here, Mr. Korb was in the process, but nothing was exhausted at the time that he filed the complaint. So you'd agree that would be an extension of Garrett, yeah? What you're suggesting is obviously an extension of Garrett. Your Honor, I do not believe that it is an extension of Garrett. Garrett plainly held that when there is an initial filing defect, whether it's partially exhausted or not exhausted at all, it still violates the text, the narrow text of the PLRA. And when there is that defect in the narrow textual interpretation, the court held that a plaintiff can use a supplemental complaint to show exhaustion post-filing. But one way of looking at Garrett, right, is that the court relied on the fact that at the moment in question, he was no longer subject to the PLRA, yeah? Yes, Your Honor. So if that's so, then the rule about supplementation, it could be argued, really isn't about how to think about the application of a supplemental complaint in the PLRA context. Your Honor, I do not think that the reading of Garrett that you just put forth would be logically consistent with the opinion in that case because the opinion was discussing Rule 15d as a vehicle to correct an initial filing defect. And the fact that Mr. Garrett had been released from prison only mattered as a post-filing fact once the court found that he could use a supplemental complaint to cure the initial defect in the first instance. Opposing counsel's rule with the narrow textual reading would require that Garrett was wrongly decided and that his complaint should have been dismissed without prejudice to refiling, something that opposing counsel admits in the response brief, that they believe that Garrett was wrongly decided and an unfaithful application of the Supreme Court's decision in Jones v. Bach. Yeah, I'm sorry. So, Garrett, go ahead and listen. But Garrett faithfully applied Jones v. Bach in holding that the PLRA, specifically the exhaustion requirement, does not override the normal operation of Rule 15d. That language is boilerplate and does not go far enough to override the normal operation of a federal rule. As we explained in our brief, looking at the PLRA, you can see this in the statutory framework. The exhaustion requirement is Section 1997EA. It makes no reference to any law or rule of civil procedure. But in Section 1997EG, just a few subsections down, the PLRA specifically mentions that the rule in that section is true, notwithstanding any other law or rule of civil procedure. So when Congress wanted to override the normal operation of the rules, they certainly knew how to do so, and they did not do so in Section 1997EA. But we have to reconcile the two so that they work in tandem. And my concern with the expansion of Garrett, as opposed to limit it to his facts, is whether an expansion of Garrett really empties out any meaning from the PLRA. The purpose of the PLRA was to have the prison authorities handle the matters before they became a judicial proceeding. And are we now in a sense nullifying that purpose by saying that at various points along the way, you can supplement? Shouldn't the rule be that, yes, you can supplement, but we need to have some kind of a guidance and bright line as to when that's going to take place? Your Honor, our approach does nothing to limit the PLRA's purpose of requiring plaintiffs to exhaust. Our approach would not excuse any plaintiff who failed to properly and fully exhaust. Well, before you file a lawsuit, that's a question. You obviously have to exhaust before you got judgment in the case, unless he has been waived. But the question is, should it be exhaust at an early point, which I think was the intention of the statute? Your Honor, the language in the PLRA exhaustion requirement has similar or materially indistinguishable language from a variety of other statutory preconditions and exhaustion requirements. I think the main example is the Supreme Court's decision in Matthews v. Diaz, allowing plaintiffs to file a supplemental complaint to show that they exhausted post-filing under the Social Security Act. Another example is the First Circuit's decision in Gadbois v. Farmerica. And in that case, the text of the False Claims Act, under which the plaintiff was suing, had very specific language that no person may bring a related action. And still, the First Circuit rejected the argument that that language, no person may bring, precluded the use of supplemental complaints. Let me follow up on what Judge Robrano's point is. How do we ensure that our opinions are limited such that plaintiffs don't believe they can file suits, and then somewhere while the case is pending in the district court, they initiate and they're after complete exhaustion? Because it's, by permitting that, we have eliminated the goal of Congress of internal exhaustion. So how do we, what's our limiting principle here to ensure that an opinion does not encourage folks to exhaust concurrent with the pendency of a federal lawsuit? Your Honor, I think there are two answers to that question. The first is that it would not open the floodgates to a variety of plaintiffs taking this course of action, because they would still need to completely and fully follow the prison grievance policies, which in Pennsylvania require that the plaintiff or the inmate first file the initial grievance form within 15 days of the incident complained of. So there really wouldn't be that much time to delay. But the second is that if the court, if the district court did perceive any sort of gamesmanship or saw that there was purposeful delay, Rule 15d does grant the district court discretion to grant or deny a motion for leave to supplement a complaint based on just terms. So if there were any concerns by the district court that the plaintiff were delaying to achieve some sort of advantage, the court could exercise its discretion to deny the motion for leave to supplement. But that did not. But that did not. Go ahead. Sorry. But that did not occur here. Mr. Korb was not engaging in any sort of gamesmanship or dilatory practices. He was doing the best he could as a special needs pro se inmate to comply with the rules. He initiated the prison grievance policy just a few days after filing this lawsuit and pursued each step very quickly upon receiving a decision from the grievance coordinator. And then after receiving full exhaustion, he did his best to continually inform the court from letter after letter that should have been construed as a motion for leave to supplement the complaint. Right. That was a good answer, but it didn't answer the question. Right. So I want to refocus you. Right. Here's what the problem is. We've got to write something and we've got to think of a principled way to create the extension that you're asking for. From your perspective, not forecasting, that's the way we're thinking about it, but we've got to think about it from your perspective. So if I understood you correctly, you, with regard to your client, say, you know, he started the process and completed it before the motion to dismiss. So that's why the suggestion of Judge Rebrano that you just dismiss without prejudice was not palatable. But the question of Judge Swartz is, what is the principled way in which we arrive at a rule? And let me tell you what our conundrum is. So if I understand your point, you say, oh, I'm going to start the lawsuit because I anticipate exhaustion will be completed at some point in time. And one of the suggestions that you made is as long as the exhaustion happens before a motion to dismiss is filed, we're good. But that's not a rule, right? Because a motion to dismiss can be filed at various points in the litigation. There's no timetable on the resolution of grievances. Your clients may have additional grievances. And so, you know, thinking about the application of such a rule could lead to haphazard and inconsistent timetables. So that's the context in which I'd like you to think about this, because right now the rule is simply applied. Fully exhaust, then file the lawsuit. If you can file the lawsuit before you fully exhausted, then there are variables that the court has no control over, which could affect the meeting out of justice in different ways to different individuals. I understand that with regard to Mr. Korb, it makes perfect sense to you. But, you know, we can't make a ruling merely sui generis to him, particularly if it requires an extension of Garrett. So I want you to talk to us about a principled rule, a principled line drawing. Yes, Your Honor. The line would simply be that the plaintiff would need to fully and properly exhaust. And I know that sounds like it might affect a lot of people, but it really wouldn't, Your Honor, and for a few reasons. First, that the district court could still dismiss during the judicial screening process before the defendants are ever served if they believe there is a failure to exhaust. Well, I think exhaustion would be an affirmative defense. It's not a jurisdictional point. Is that right? Yes, Your Honor. So the court would not be able to dismiss the case until the defendant makes an affirmative showing that maybe the defendants may not even either overlook it or choose not to go down that path. So I'm not sure that would be a practical way of doing, of handling this. Your Honor, this court decided in the case of McPherson that when it's clear from the face of the complaint that a prisoner has not exhausted, they can dismiss at the judicial screening stage. But beyond that, Your Honor, the rule would still only apply to prisoners who fully and properly exhausted at the time that a supplemental complaint is being considered, either upon motion for leave to supplement by the plaintiff or following a motion to dismiss by the defendant. And this is the normal operation of Rule 15b under a variety of statutory contexts. I understand that the court may be concerned about policy issues of allowing possibly more complaints to go through the system. However, there needs to be a balance between these policy concerns and Rule 15d. It's not a policy concern we have. We have a congressional directive to ensure that exhaustion occurs. So this isn't a question about policy. It's a question about ensuring we are actualizing Congress's directive. And I'm wondering if one of the ways this becomes a cabin case is the circumstance where a plaintiff chooses, although they need not, to make allegations about exhaustion in their initial completing to the court, and that this rule would only apply to some plaintiff who decides to plead that. Is that one way we can limit the mischief this could cause? Yes, Your Honor. Upon motion by a plaintiff for leave to supplement the complaint, show they've exhausted, could be a way to cabin this. No, that's not what I'm – no, no, no. I'm not saying that. I'm saying at the get-go, when brought – we're going to use the PLRA's language – when brought, i.e., when presented to the court, when that pleading makes an assertion about the status of exhaustion, it's under those circumstances only that a court would be led to the supplemental pleading land. If you have a plaintiff when he, quote, or she brings the complaint under PLRA, makes no reference to exhaustion, this rule has no applicability. Is that one way to cabin this? Your Honor, I don't think that that would be applicable to Mr. Corbin, this action, or would be a reasonable way to limit. Why wouldn't it be applicable to him? He was the one that raised exhaustion. He brought it up in his initial materials to the district judge. It's exactly the situation. In his initial complaint, Your Honor, he did not make any reference to exhaustion. Yes, he did. I thought he said that we've only – there's the steps one, two, and three, and I have to complete it. I thought that's how this all came to the court's attention. When he submitted his amended complaint, Your Honor, he attached a letter that he became aware that he needed to supplement and at that – or, sorry, to exhaust the prison grievance system. And upon the amendment, he had also begun the prison grievance policy. He filed his initial complaint, Your Honor, on February 1st and followed it up with an amended complaint on February 5th. At the same time that he filed the amended complaint, Your Honor, he attached a letter saying that he had just begun the prison grievance process because he had only been made aware in those few days between the initial complaint and the amended complaint that he needed to exhaust. My point is in talking about this is he brings it up in his pleadings on his own. Where a plaintiff chooses on his own in those initial pleadings to the court about exhaustion, only in those circumstances would we be dealing with this supplemental complaint situation. I recognize maybe it wasn't in the very first complaint, but by the time he added the other two plaintiffs, he submits a document that says also I must expire the Albion grievance steps one, two, three. Correct? You're thinking of the same document I've just read, right? Yes, Your Honor. And I think that would be a great way to limit the ruling only when the plaintiff themselves is drawing attention to it to the court. That makes it clear that the plaintiff is not attempting to game the system or to get out of the exhaustion requirement, but simply that early on he made a minor error in confusing which process needed to come first and that upon realizing which process needed to come first, he immediately began to exhaust the prison grievance policy. So stick with me for a second in following up on what Judge Rubino was talking about, which is we're handing these district court judges these pro se matters. They receive a pro se submission before issue is joined, before the other side is even in the case, and it says I haven't completed the grievance process. Would it be within the district court judge's discretion at that time to dismiss without prejudice? Is that one alternative a district court judge could use? Yes, Your Honor. At that point where it is clear from the record, the district court would have the authority under the judicial screening process to dismiss without prejudice to refiling. As both parties agree, dismissal with prejudice would not fall under this court's precedent on how to handle an exhausted plaintiff. And would it also be within the district court judge's discretion to opt for a motion under Rule 15d to supplement that pleading once exhaustion is complete? Is that another option that the district court judge could take? Yes, Your Honor. And in this case, since the case did proceed past the point in which Mr. Korb had exhausted, at that point it is our contention that it then would have been improper to dismiss either with or without prejudice because the supplemental complaint would have been available. Prior to full exhaustion, then it would have been within the district court's discretion on how to proceed. But once he had fully and properly exhausted, he should have been able to use Rule 15d to supplement, just as any other plaintiff under other statutory pre-filing condition frameworks would have been allowed to supplement the complaint. Okay. Thank you so much.  And we'll hear from your colleague now. Thank you, Judge Greenaway, and may it please the Court. I'd like to pick up with the discussion about line drawing. And I think it's clear from the conversation that I just heard my friend would have the line be shifting constantly. I think this court should draw the line where every other court of appeals in the country has drawn it, under identical facts, to this case. And it should require dismissal without prejudice to bring in a new action. That gives purpose and meaning to the PLRA, but also ensures that the inmate can proceed if they have a meritorious claim. And I think it's important that the Ninth Circuit continues to draw the line there, notwithstanding its decision in Jackson v. Fong, which, again, this court basically adopted Jackson v. Fong in the Garrett case. So I think it's telling that the Ninth Circuit continues to follow this approach. Yeah, but wouldn't that be inconsistent with Garrett? I don't believe so, Your Honor. I think Garrett hinged on the release from incarceration and the change in status. So you would limit it to those facts? You would limit Garrett to those facts? I believe it was limited to those facts. And, again, so the Ninth Circuit took this issue up in reverse order, right? So it had its decision in McKinney in 2002, and then Jackson v. Fong came along. And it was actually they were getting the argument from the other side. It was the prison there that was arguing this is governed by McKinney. And the Ninth Circuit rejected that argument, said, no, there is a distinction between being released from incarceration because you are no longer subject to the PLRA's exhaustion provision. Versus somebody who is still an inmate, violates the PLRA by bringing the action prematurely, but then completes the action while litigation is pending. And I think the unanimity among courts of appeals is not an accident. Those decisions all recognize that the PLRA's mandatory exhaustion provision is not simply a technicality, as my friend suggests. Rather, it's the centerpiece of the statute, and it effectuates fundamental policy goals. And I don't think the policy goals that Congress set forth are improved when you have a system where litigation and grievances are proceeding on parallel tracks simultaneously. Well, then let's talk about this case, though. When you when you when the defendant filed their motion to dismiss, the defendant knew that the plaintiff had completed exhaustion, correct? Correct. So how does that interfere with the goals of Congress of allowing the prison to have at it the first in the first instance before a judge does? The concern, Your Honor, is what the Second Circuit identified in Ford v. Johnson, a case that we said in our brief. What we don't want is litigation casting a cloud over what is supposed to be alternative dispute resolution. And we don't want inmates going through the grievance process like it is irrelevant and it doesn't really matter. And I think this case sort of demonstrates the risk that the Seventh Circuit was talking about. How does it how does it do that? I mean, if if if if. The overall objective of the PLRA is to create judicial efficiency, make sure there's a streamlined process and that the administrative remedies have been exhausted. Once those grievance processes have been exhausted, there's no harm to any party. It doesn't preclude any kind of dispute resolution. It does, if the inmate isn't proceeding through the grievance process with an open mind, Your Honor. So so as I was saying, this inmate, he files his complaint in court and says, I've got to go check off these one, two, three boxes in the grievance system before I can come back. And in the grievance process, he's presented with video evidence and told that that evidence directly contradicts the way he describes the event. And so rather than proceeding through the grievance process with an open mind, trying to figure it out between the inmate in the prison before we involve the court. We have somebody who is just checking boxes on a form so he can continue with this litigation. One thing that we've learned in the last year during the pandemic is that oftentimes video evidence is not dispositive. Sometimes is it sometimes isn't. So I'm not sure that that's should be dispositive here in our thinking about this. I think the point that Judge Schwartz made that I really want you to focus on is put for aside for a moment your thoughts about whether or not one goes, you know, conscientiously into a dispute resolution process. But the objective of Congress is achieved in the circumstance that occurred here. And that is that before litigation proceeds, the administrative remedies are exhausted. So going forward, if that's where we drew our line, number one, why is it inconsistent with Congress's intent? Why is it not represent judicial efficiency and why isn't it consistent with our own jurisprudence? We always take into account the jurisprudence of other circuits, but it's not what we're bound by. We're bound by our own. Yes, you are. The reason it's inconsistent is it's inconsistent with the clear language that Congress used in the appeal. Right. It didn't want any federal litigation to begin until the administrative grievance process had started. And so with respect to this court's precedent, I believe your honor is referring to this court's Rule 15 D precedent. Is that is that correct? Yes. Go ahead. Yes. Go ahead. Yes. And I think my friend is reading more into Rule 15 D than is actually there. Rule 15 D is silent as to the effect that a supplemental complaint might have on a claim or defense. And I would point the court's direction towards the advisory committee comment to Rule 15 D that my friend references in her reply brief. And if I may, I'd like to read from that comment. It says that Rule 15 D, quote, does not attempt to deal with such questions as the relation of the statute of limitations, the operation of the doctrine of latches, or the availability of other defenses. So we have to look to other principles of law to figure out whether or not Rule 15, a supplemental complaint under Rule 15 D, has some sort of legal effect. Well, we have Jones v. Bach. We have Garrett. Both of them tell us that it has legal effect. Namely, it can cure a non-jurisdictional, and we have T-Mobile, and a jurisdictional defect. So we have case law that tells us exactly what Rule 15 allows a party to do. But there was a different legal principle at play in Garrett, your honor. And it's important to keep in mind that Garrett involved a pleading that was simultaneously an amended and a supplemental pleading. So it displaced the original one. And the legal principle that came into play because of that was that an inmate's status for purposes of the PLRA exhaustion provision is not determined at the time of the incident or even the time of the original pleading, but at the time the operative pleading is filed. So that's the legal principle that we use to sort of fill in the gap where Rule 15 D itself is silent. But Garrett, doesn't Garrett tell us, though, that if an event postdates the complaint and Rule 15 allows you to supplement it, it basically becomes part of the operative complaint as if alleged within its four corners. Isn't that what Rule 15 does under these principles in Bach and Garrett? Your honor, I think there's a distinction, though, between whether a supplemental pleading is permitted under Rule 15 D and what legal effect that has. And here we still have an inmate who violated the PLRA by bringing the action before exhausting. And so it doesn't solve that particular defect. Well, when you say violating, I'm interested in following up on that. If I read your brief correctly on pages 11 and 12, you essentially concede that the district court erred when it dismissed with prejudice. Correct? We acknowledge it should have been a dismissal without prejudice. Correct, your honor. All right. So given the fact that it's clear that Corb exhausted his claims here and is only prevented from proceeding due to the district court's error, you're not asking us to affirm, are you? What we're asking, your honor, is to affirm but to modify the judgment slightly, which this court has done in other contexts. So you can modify the judgment to reflect that it's a dismissal without prejudice as to Sergeant Hastings only. I don't want to get too far down the road here. We would ask you to affirm outright with respect to Clark and Wetzel. How can we affirm outright on Clark and Wetzel and be consistent with our precedent? The precedent says a civil rights plaintiff should have a right to amend if there's a defect in the pleading. The district court here said that we're not going to allow the pleading to be amended because it'd be futile because there was no exhaustion. If we conclude that there has been exhaustion, the grounds for futility no longer exist. So don't we have to send it back to permit amendment as to Wetzel and Clark? Whether he's going to be successful is a different story, but don't we have to allow that? Well, I think we have different grounds for futility with respect to Wetzel and Clark, and this court, of course, may affirm for any reason supported by the record. And Mr. Clark and Mr. Wetzel, they are prison administrators. We're not required to check common sense at the door when we're engaging with a motion to dismiss. They don't meet with inmates about routine matters like whether or not their cells are clean. There's no allegation that they were there. So the only potential theory of liability against them would be respondeat superior. That's a theory of liability that this court has rejected. So it would be a slightly different futility basis than the one articulated by the district court. I believe I'm past the 15 minutes. So unless there are any other questions, I'd like to wrap up quickly. I had just a question that you rely on the Oriaki United States, which is an unpublished decision. And Oriaki was based upon the Ahmed case, and that was rejected completely by Garrett. That's correct, Your Honor, but it's not just the Oriaki case. There is, we cite to a long line of precedents from this court that sort of. Well, I'm interested in this particular one. Is that it was that you want to modify that reliance? Your Honor, I think the reliance on Ahmed, which was the most analogous case in this circuit that was available to the court at that moment. It doesn't hold up in light of what the Garrett panel said about Ahmed. But I think the reliance, I believe, was on the Johnson B. Jones case in the Eighth Circuit, which remains the law in the Eighth Circuit and remains the law across circuits in the country. I think that holds up, Your Honor. Okay. And if I can just wrap up, unless there are other questions. The text, history and purpose of the PLRA and the consensus view among courts of appeals all point in the same direction here. But Korb's approach would require this court to go in a new direction, to rewrite the PLRA and Rule 15 and become the only court in the country to rule in this way. This court should reject that approach. It should affirm the district court's judgment, albeit with the slight modification that the dismissal with respect to Sergeant Hastings is without prejudice. Thank you. All right. Thanks so much. We'll hear from your colleague on rebuttal. Your Honor, I want to make it clear at the very start of my rebuttal that supplemental complaints can cure defects in the initial complaint. Judge Schwartz pointed out that that is the precedent, Garrett, T-Mobile, within this circuit and a variety of other circuits, that the supplemental complaint does not just add the fact to the complaint but also can act to cure the initial defect or else the Rule 15d would be pointless to state that a supplemental complaint can be used even when there was an initial defect. But let me ask you this. If the statute of limitations was not a problem here, wouldn't the, and I don't mean to say the easy way, but maybe the most feasible way of resolving this case would be to dismiss it without prejudice and he can then amend his complaint and no policies are affected and the matter can proceed in accordance with the rules. Your Honor, I push back on that and argue that Rule 15d is actually the most efficient and effective way to continue with this case. The rulemakers designed Rule 15d to promote efficiency and prevent plaintiffs from having to needlessly refile when the case could proceed into action because some event occurred post-filing that made the initial defects go away. And Your Honor, Judge Robrano, regarding your point on opposing counsel's reliance on Ariake and similar lines of unpublished cases from the circuit, opposing counsel's cases do not address the interaction between Rule 15d and the PLRA. They are simply PLRA cases alone in which the plaintiff made no attempt to supplement the complaint and in some cases didn't even properly exhaust like this court's decision in Rowan v. Coleman. Of course, a case where the plaintiff did not properly exhaust and did not bring it to the court's attention, then there would be no question that it should be dismissed. However, here this is a different case. This is where the plaintiff fully and properly exhausted and brought it to the court's attention early on before the defendants were even served. Not just before they filed the motion to dismiss, but before they were even served. There is no prejudice to the defendants in this case and there is no violation of the PLRA's concern about grievances since Mr. Korb fully participated in the grievance system. As such, the court should vacate the district court's March 18th, 2019 order and remand with instructions to allow Mr. Korb to supplement his complaint to show that he exhausted. Great. Thank you very much, counsel. Thanks once again to Mr. McGinley and the program. And we will take the matter up.